IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MEDPOINTE HEALTHCARE INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 07-407 SLR |
| ) | |
| SUN PHARMACEUTICAL INDUSTRIES ) | |
| LTD., ) | |
| ) | |
| Defendant. ) | |

**SUN PHARMACEUTICAL INDUSTRIES LTD.'s
ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
TO PLAINTIFF'S COMPLAINT**

Defendant, Sun Pharmaceutical Industries Ltd. (hereinafter "Sun"), for its Answer, Affirmative Defenses and Counterclaim to Plaintiff's Complaint, states as follows:

**THE PARTIES**

1.  Plaintiff MedPointe Healthcare Inc. ("MedPointe") is a Delaware corporation having a place of business at 265 Davidson Avenue, Somerset, New Jersey 08873.

**ANSWER:**

Admitted.

2.  Upon information and belief, defendant Sun is an Indian corporation having a place of business at Acme Plaza, Andheri - Kurla Rd, Andheri (E), Mumbai - 400 059.

**ANSWER:**

Sun admits that Sun is an Indian corporation having a place of business at Acme Plaza, Andheri - Kurla Rd, Andheri (E), Mumbai - 400 059.

## NATURE OF THE ACTION

3.      This is a civil action for the infringement of United States Patent No. 5,164,194 ("the '194 patent").  This action is based upon the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*

**ANSWER:**

Sun admits that MedPointe's Complaint purports to bring a civil action for infringement of United States Patent No. 5,164,194 based upon the Patent Laws of the United States, 35 U.S.C. § 100, *et seq*.  Sun denies all other allegations contained in paragraph 3.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**

Admitted.

5.      This Court has personal jurisdiction over Sun by virtue of, *inter alia*, its consent to personal jurisdiction in this judicial district for purposes of this action.

**ANSWER:**

Sun admits that this Court has personal jurisdiction over Sun to the extent that Sun has consented to personal jurisdiction in this Court.  Sun denies that this Court otherwise has personal jurisdiction over Sun.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and (d) and 1400(b).

**ANSWER:**

Admitted.

## THE PATENT

7.      On November 17, 1992, the '194 patent, titled "Azelastine Containing Medicaments," was duly and legally issued to Asta Pharma AG as assignee. Since August 16, 2002, MedPointe has been, and continues to be, the sole owner of the '194 patent and the sole owner of the right to sue and to recover for any infringement of that patent. A copy of the '194 patent is attached hereto as Exhibit A.

### ANSWER:

Sun admits that on November 17, 1992 the United States Patent Office issued the '194 patent, which is entitled "Azelastine Containing Medicaments," and lists as its assignee Asta Pharma AG. Sun also admits that a document purporting to be the '194 patent is attached to Plaintiff's Complaint as Exhibit A. Sun is without knowledge or information sufficient to form a belief as to the truth of the averments contained in the second sentence of paragraph 7. Sun denies all remaining allegations contained in paragraph 7.

## ACTS GIVING RISE TO THIS ACTION

8.      Upon information and belief, on or after December 13, 2006, Sun submitted ANDA 78-738 to the FDA under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)).

### ANSWER:

Sun admits that it submitted ANDA 78-738 to the FDA pursuant to Section 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)) on December 13, 2006.

9.      A [sic] under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)).

**ANSWER:**

Paragraph 9 states an incomplete conclusion and fails to contain an allegation which requires a response.

10.  ANDA 78-738 seeks the FDA approval necessary to engage in the commercial manufacture, use, offer for sale and sale of a generic ophthalmic solution product containing 0.05% azelastine hydrochloride in an aqueous solution for use in treating, *inter alia,* seasonal allergic rhinitis ("the Generic Product"). ANDA 78-738 specifically seeks FDA approval to market the Generic Product prior to the expiration of the '194 patent.

**ANSWER:**

Sun admits that ANDA 78-738 seeks FDA approval to engage in the commercial manufacture, use, offer for sale and sale of a proposed drug product identified in ANDA 78-738 and that ANDA 78-738 seeks FDA approval to market that proposed drug product prior to the expiration of the '194 patent. Sun denies all remaining allegations contained in paragraph 10.

11.  ANDA 78-738 contains an allegation under § 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug and Cosmetic Act that the claims of the '194 patent are either invalid, unenforceable and/or not infringed by the manufacture, use or sale of the Generic Product. MedPointe received written notification of ANDA 78-738 and its § 505(j)(2)(A)(vii)(IV) allegation on May 14, 2007.

**ANSWER:**

Sun admits that ANDA 78-738 contains a certification pursuant to Section 505(j)(2)(A)(vii)(IV) of the Federal, Food, Drug and Cosmetic Act that the claims of the '194 patent are invalid, unenforceable and/or not infringed by the proposed drug product that is the subject of ANDA 78-738. Sun admits that it sent written notification of the Section 505(j)(2)(A)(vii)(IV) certification to MedPointe on May 10, 2007 by United States Mail Return

Receipt Requested and that a return receipt was received by Sun reflecting a date of receipt of May 14, 2007.

12. Sun's submission of ANDA 78-738 to the FDA, including the § 505(j)(2)(A)(vii)(IV) allegation, constitutes infringement of the '194 patent under 35 U.S.C. § 271(e)(2)(A). Moreover, if Sun commercially makes, uses, offers to sell or sells the Generic Product within the United States, or imports the Generic Product into the United States, or induces or contributes to any such conduct during the term of the '194 patent, it would further infringe the '194 patent under 35 U.S.C. § 271 (a), (b) and/or (c).

**ANSWER:**

Sun denies all allegations contained in paragraph 12.

13. Sun had actual and constructive notice of the '194 patent prior to filing ANDA 78-738.

**ANSWER:**

Sun admits that it was aware of the '194 patent at the time it submitted the Section 505(j)(2)(A)(vii)(IV) certification contained in ANDA 78-738. Sun denies all remaining allegations contained in paragraph 13.

14. MedPointe will be irreparably harmed by Sun's infringing activities unless those activities are enjoined by this Court. MedPointe does not have an adequate remedy at law. Both the balance of the hardships as between MedPointe and Sun and the public interest further support this Court enjoining Sun's infringing activities.

**ANSWER:**

Sun denies all allegations contained in paragraph 14.

## PRAYER FOR RELIEF

WHEREFORE, MedPointe prays for judgment as follows:

A.  That Sun has infringed the '194 patent;

B.  That, pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of ANDA 78-738 under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)) shall not be earlier than the expiration date of the '194 patent, including any extensions;

C.  That Sun, its officers, agents, servants and employees, and those persons in active concert or participation with any of them, are preliminarily and permanently enjoined from making, using, offering to sell or selling the Generic Product within the United States, or importing the Generic Product into the United States, prior to the expiration of the '194 patent, including any extensions;

D.  That MedPointe be awarded monetary relief if Sun commercially makes, uses, offer to sell or sells the Generic Product within the Unites States, or imports the Generic Product into the United States, prior to the expiration of the '194 patent, including any extensions, and that any such monetary relief be awarded to MedPointe with prejudgment interest;

E.  That MedPointe be awarded the attorney fees, costs and expenses that it incurs prosecuting this action under 35 U.S.C. § 285; and

F.  That MedPointe be awarded such other and further relief as the Court deems just and proper.

## DENIAL OF PRAYER FOR RELIEF

Sun denies that MedPointe is entitled to any of the relief requested, or to any relief whatsoever, and prays for judgment in favor of Sun dismissing this action with prejudice, and awarding Sun its reasonable attorneys' fees pursuant to 35 U.S.C. § 285, interest, and costs of this action, and such other or further relief as this Court may deem just and proper.

## AFFIRMATIVE DEFENSES

Without prejudice to the denials set forth in its Answer and without admitting any allegations of the Complaint not otherwise admitted, Defendant Sun Pharmaceutical Industries, Ltd. ("Sun") avers and asserts the following Affirmative Defenses to Plaintiff MedPointe Healthcare Inc.'s ("MedPointe") Complaint.

### FIRST AFFIRMATIVE DEFENSE
### (Noninfringement of U.S. Patent No. 5,164,194)

The manufacture, use, sale, offer to sell or importation into the United States of Sun's proposed drug product that is the subject of ANDA 78-738 would not and will not directly, indirectly, contributorily and/or by inducement, infringe any validly construed claim of U.S. Patent No. 5,164,194 ("the '194 patent") either literally or under the doctrine of equivalents.

### SECOND AFFIRMATIVE DEFENSE
### (Invalidity of U.S. Patent No. 5,164,194)

Upon information and belief, the claims of the '194 patent are invalid and/or unenforceable for failure to comply with one or more of the provisions of Title 35 of the United States Code, including, but not limited to Sections 101, 102, 103 and/or 112.

### THIRD AFFIRMATIVE DEFENSE
### (Unenforceability of U.S. Patent No. 5,164,194)

Upon information and belief, the '194 patent is unenforceable due to inequitable conduct committed by the patent applicants during prosecution of the '194 patent before the United States Patent and Trademark Office ("PTO"). In violation of their duty of candor to the United States Patent & Trademark Office ("PTO"), applicants for the '194 patent misled the PTO about the properties of the alleged invention claimed therein. More particularly, circumstances constituting the applicants' inequitable conduct include, but are not limited to, affirmative misrepresentations regarding the advantages and benefits of azelastine administered to

prophylactically treat allergies. Additionally, Sun hereby incorporates by reference into this Third Affirmative Defense paragraphs 9-18 of Sun's Counterclaims herein.

## COUNTERCLAIMS

1. Counterclaimant Sun Pharmaceutical Industries Ltd. ("Sun") is an Indian corporation having a place of business at Acme Plaza, Andheri - Kurla Rd, Andheri (E), Mumbai - 400 059.

2. Upon information and belief, Counterclaim Defendant MedPointe Healthcare Inc. ("MedPointe") is a Delaware corporation having a place of business at 265 Davidson Avenue, Somerset, New Jersey 08873.

3. As a consequence of MedPointe's Complaint against Sun, there is now an existing and continuing justiciable controversy between Sun and Medpointe regarding the infringement, validity and enforceability of U.S. Patent No. 5,164,194 ("the '194 patent").

4. This court has jurisdiction over the subject matter of these Counterclaims pursuant to section 1331 and 1338(a) of Title 28 of the United States Code, as they involve substantial claims arising under the United States Patent Act, 35 U.S.C. § 1 *et seq.*

5. This court may declare the rights and legal relations of the parties pursuant to section 2201 and 2202 of Title 28 of the United States Code, because Sun's Counterclaims present an actual controversy within the Court's jurisdiction that the patent asserted by MedPointe against Sun is not infringed, is invalid and/or is unenforceable.

6. Venue for these Counterclaims is proper within this District.

## COUNT I
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '194 PATENT

7. The manufacture, use, sale, offer to sell or importation into the United States of Sun's proposed drug product that is the subject of ANDA 78-738 would not and will not directly,

indirectly, contributorily and/or by inducement, infringe any claim of the '194 patent either literally or under the doctrine of equivalents.

## COUNT II
## DECLARATORY JUDGMENT OF PATENT INVALIDITY OF THE '194 PATENT

8. Upon information and belief, the claims of the '194 patent are invalid and/or unenforceable for failure to comply with one or more of the provisions of Title 35 of the United States Code, including, but not limited to Sections 101, 102, 103 and/or 112.

## COUNT III
## DECLARATORY JUDGMENT OF PATENT UNENFORCEABILITY OF THE '194 PATENT

9. Upon information and belief, the '194 patent is unenforceable due to inequitable conduct committed by the patent applicants during prosecution of the '194 patent before the United States Patent and Trademark Office ("PTO").

10. Upon information and belief, on August 12, 1985, Jurgen Engel and Gerhard Scheffler filed an application in the PTO claiming compounds that were derivatives of azelastine and like azelastine were antiallergic and antiasthma prophylactically active. The applicants argued the compounds were better than azelastine because they could be applied as an aerosol with no, or considerably less, bitter taste. On February 16, 1987, a declaration was filed in support of patentability of the derivative compounds wherein the declarant asserted the derivatives of azelastine were superior to azelastine because "[azelastine] cannot be applied in the form of an aerosol" and that "use as an aerosol is especially important for antiallergic and asthma prophylactic compounds." The declarant also argued the compounds of Examples 2 and 4 of the application "have almost 3 times as strong an antiallergic and asthma prophylactic action as [azelastine]." The declarant was an employee of Asta-Werke, but failed to disclose this fact to the PTO. The application later issued as U.S. Patent No. 4,704,387 ("the '387 prior art patent").

11. Upon information and belief, on November 13, 1987, less than nine months from the date the declaration was filed in support of the Engel and Scheffler application, Helmut Hettche filed an application in the Federal Republic of Germany claiming azelastine containing medicaments. The application claimed azelastine medicaments administered as aerosols to prophylactically treat allergy. The application further claimed that azelastine containing medicaments administered as aerosols resulted in no bitter taste side effect. On July 12, 1990, Helmut Hettche filed an application in the United States Patent Office claiming foreign priority to the application filed in the Federal Republic of Germany on November 13, 1987.

12. Upon information and belief, on February 12, 1990, a declaration was filed in support of the '194 patent application and to overcome an obviousness rejection based in part on the '387 prior art patent. The declarant averred azelastine was twice as effective as the compound of Example 1 of the '387 prior art patent. The applicants prosecuting the patent argued these results were surprising and unexpected and supported a finding that the '194 medicaments were not obvious in view of the '387 patent. The applicants failed to inform the examiner that the '387 patent claimed five different compounds and that Example 4 thereof was structurally closer to azelastine and should have been compared to azelastine. The examiner, nonetheless, rejected the declaration anyway because there was an incomplete recitation of the study protocol used to obtain the results.

13. Upon information and belief, in response to the examiner's criticism of the declaration, the applicants filed a second declaration purporting to further describe the experimental method of the first experiment. However, the second declaration did not describe the experiment conducted in the first declaration. Instead, it described a hypothetical experiment that involved application of azelastine directly to the nasal mucosa of research animals, an *in*

*vivo* test. This test would have been more probative of the patentability of the application. However, the test that was actually conducted and described in the first declaration was an *in vitro* test that involved studying the effects of the drug on cells suspended in a buffered solution. The same declarant gave both the first and second declarations and knew the second declaration did not describe the experiments actually conducted and could not be used to support patentability. The declarant was also an employee of Asta-Werke, but failed to disclose this fact to the PTO. The application later issued as U.S. Patent No. 5,164,194, the patent in dispute.

14. Upon information and belief, Helmut Hettche and Jurgen Engel participated in a scheme to materially misrepresent to the PTO the advantages and disadvantages of azelastine and derivative azelastine compounds in an effort to obtain a patent monopoly on azelastine medicines and derivative medicines of azelastine. Jurgen Engel made knowingly false statements to the PTO in pursuing an application for azelastine derivatives. But for these statements, Jurgen Engel would not have been granted the '387 patent. Helmut Hettche later made knowingly false statements to the PTO in pursuing his application for azelastine containing medicines. But for these statements, Helmut Hettche would not have been granted the '194 patent over the '387 patent.

15. Upon information and belief, Jurgen Engel was an employee at Asta-Werke while the applications leading to the '194 patent were filed and prosecuted. Helmut Hettche was also an employee of Asta-Werke and was a subordinate employee to Jurgen Engel at the time those applications were being filed. Helmut Hettche knew of the application leading to the '387 patent claiming derivative compounds to azelastine. Helmut Hettche participated in the development and testing of those compounds and was aware of the statements made in the development and testing of those compounds and was aware of the statements made in the application and

prosecution. Jurgen Engel was also aware Hettche was developing the medicaments claimed in the '194 patent, including an aerosol of azelastine at the time he filed the application resulting in the '387 patent. Both applications were prosecuted by the same U.S. law firm.

16. Upon information and belief, Helmut Hettche was aware that at least the compounds of Examples 2 and 4 of the '387 patent were almost 3 times more effective as antiallergy compounds than azelastine. Nonetheless, when prosecuting the application that resulted in the '194 patent, Hettche represented to the PTO that azelastine was twice as effective as the compound of Example 1 of the '387 patent, and that this result demonstrated azelastine was surprisingly and unexpectedly superior to the compounds disclosed in the '387 patent. Although Helmut Hettche knew the compounds of Examples 2 and 4 of the '387 patent were nearly three times as effective as azelastine, Hettche intentionally failed to disclose this fact to the PTO. The applicant knew that if he demonstrated the superior properties of the other '387 compounds including Examples 2 and 4, he would not be able to overcome a prima facie finding of obviousness by the examiner.

17. Upon information and belief, Helmut Hettche was also aware that Jurgen Engel had previously disclosed the superiority of the '387 patent compounds to the PTO. In an effort to further argue azelastine was superior to the compounds disclosed in the '387 patent and to throw the Examiner off track, the applicant misrepresented study protocols and results described in the first declaration filed in support of the application. These misrepresentations were designed to make the method of application of azelastine claimed in the '194 patent application appear superior to application of the compounds disclosed in the '387 patent administered in the same manner. In fact, Hettche never presented results of these types of comparison studies.

18. Upon information and belief, Helmut Hettche also misrepresented the state of the prior art in seeking to overcome the examiner's rejection to the Hettche application as anticipated by United States Patent No. 3,813,384 ("the '384 prior art patent"). In the paragraph bridging columns 6 and 7 of that patent, the '384 patent discloses administering azelastine "in the usual embodiments such as tablets, dragees, capsules, suppositories, drops, ointments, creams as well as injection solutions." The applicants of the '194 patent argued that this reference as interpreted by a person skilled in the art does not disclose that drops are administered to the patient. However, the applicants knew that Jurgen Engel had already argued to the PTO that the ability to administer antiallergic compounds as aerosols was important for the treatment of conditions described in the '194 patent application. It is well known in the art that aerosols are a form of administering drops. In fact, the '194 patent application admits drops are routinely administered to patients to treat allergies wherein at column 2, lines 12 through 17 the applicant states the preferred methods of administering azelastine are in the forms of "drops, ointments, [and] creams..." These were the exact modes of administering azelastine as disclosed in the '384 patent. Nonetheless, the applicants for the '194 patent continued to attempt to confuse and confound the examiner by arguing that one skilled in the art would not have understood the drops of azelastine disclosed in the '384 patent to be administered directly to the patient.

## PRAYER FOR RELIEF

WHEREFORE, Sun respectfully requests the Court to enter judgment against Counterclaim Defendant MedPointe as follows:

A. Declaring that Sun's proposed drug product that is the subject of ANDA 78-738 would not and will not directly, indirectly, contributorily and/or by inducement, infringe any claim of the '194 patent;

B.   Declaring that U.S. Patent No. 5,164,194 is invalid for failure to comply with one or more of the provisions of 35 U.S.C. §§ 101, 102, 103 and/or 112;

C.   Declaring that U.S. Patent No. 5,164,194 is unenforceable due to the '194 patent applicants' inequitable conduct before the PTO.

D.   Awarding Sun its reasonable costs and attorneys' fees incurred in connection with this action; and

E.   Awarding all such other and further relief as this Court may deem just and proper.

Dated: August 27, 2007

Respectfully Submitted,

/s/ Francis J. Murphy
Francis J. Murphy, ID No. 223
MURPHY & LANDON
1011 Centre Road, Suite 210
Wilmington, Delaware 19805
(302) 472-8103
(302) 472-8135 (fax)
fmurphy@msllaw.com
**Attorneys for Defendant
Sun Pharmaceutical Industries Ltd.**

*Of counsel:*
Keith D. Parr
Scott B. Feder
Kevin M. Nelson
David B. Abramowitz
Amanda K. Davis
LORD, BISSELL & BROOK LLP
**Attorneys for Defendant
Sun Pharmaceutical Industries Ltd.**
(312) 443-0261 (SBF)
(312) 896-6261 (SBF) (fax)
sfeder@lordbissell.com