## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MEDPOINTE HEALTHCARE INC., <br>         Plaintiff, <br><br>      vs. <br><br>SUN PHARMACEUTICAL INDUSTRIES LTD., <br><br>         Defendant. | )<br>)<br>)<br>)<br>)<br>)   C. A. No. 07-407-SLR<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S REPLY TO DEFENDANT'S COUNTERCLAIMS

Plaintiff MedPointe Healthcare Inc. ("MedPointe"), for its Reply to the

counterclaims of Defendant Sun Pharmaceutical Industries Ltd. ("Sun"), hereby states as

follows:

## COUNTERCLAIM PARAGRAPH 1

Counterclaimant Sun Pharmaceutical Industries Ltd. ("Sun") is an Indian corporation having a place of business at Acme Plaza, Andheri -Kurla Rd, Andheri (E), Mumbai - 400 059.

## REPLY TO COUNTERCLAIM PARAGRAPH 1

Upon information and belief, MedPointe admits that Sun is an Indian corporation

having a place of business at Acme Plaza, Andheri -Kurla Rd, Andheri (E), Mumbai - 400 059.

## COUNTERCLAIM PARAGRAPH 2

Upon information and belief, Counterclaim Defendant MedPointe Healthcare Inc. ("MedPointe") is a Delaware corporation having a place of business at 265 Davidson Avenue, Somerset, New Jersey 08873.

- 1 -

**REPLY TO COUNTERCLAIM PARAGRAPH 2**

Admitted.

**COUNTERCLAIM PARAGRAPH 3**

As a consequence of MedPointe's Complaint against Sun, there is now an existing and continuing justiciable controversy between Sun and MedPointe regarding the infringement, validity and enforceability of U.S. Patent No. 5,164,194 ("the '194 patent").

**REPLY TO COUNTERCLAIM PARAGRAPH 3**

MedPointe admits that Sun, by infringing the '194 patent, has created an actual and justiciable controversy between itself and MedPointe regarding that infringement. MedPointe further admits that Sun purports to state various affirmative defenses and counterclaims. MedPointe, however, denies that there is any factual or legal basis for these affirmative defenses and counterclaims. To the extent that Counterclaim Paragraph 3 contains any other or additional averments, MedPointe denies them.

**COUNTERCLAIM PARAGRAPH 4**

This court has jurisdiction over the subject matter of these Counterclaims pursuant to section 1331 and 1338(a) of Title 28 of the United States Code, as they involve substantial claims arising under the United States Patent Act, 35 U.S.C. § 1 *et seq.*

**REPLY TO COUNTERCLAIM PARAGRAPH 4**

MedPointe admits that Sun purports to state declaratory judgment counterclaims that arise under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.* MedPointe further admits that this Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a). MedPointe, however, denies that there is any factual or legal basis for these counterclaims. To the extent that Counterclaim Paragraph 4 contains any other or additional averments, MedPointe denies them.

- 2 -

**COUNTERCLAIM PARAGRAPH 5**

This court may declare the rights and legal relations of the parties pursuant to section 2201 and 2202 of Title 28 of the United States Code, because Sun's Counterclaims present an actual controversy within the Court's jurisdiction that the patent asserted by MedPointe against Sun is not infringed, is invalid and/or is unenforceable.

**REPLY TO COUNTERCLAIM PARAGRAPH 5**

MedPointe admits that Sun, by infringing the '194 patent, has created an actual and justiciable controversy between itself and MedPointe regarding that infringement. MedPointe further admits that Sun purports to state declaratory judgment counterclaims that arise under 28 U.S.C. §§ 2201 and 2202 and the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.* MedPointe, however, denies that there is any factual or legal basis for these counterclaims. To the extent that Counterclaim Paragraph 5 contains any other or additional averments, MedPointe denies them.

**COUNTERCLAIM PARAGRAPH 6**

Venue for these Counterclaims is proper within this District.

**REPLY TO COUNTERCLAIM PARAGRAPH 6**

Admitted.

**COUNTERCLAIM PARAGRAPH 7**

The manufacture, use, sale, offer to sell or importation into the United States of Sun's proposed drug product that is the subject of ANDA 78-738 would not and will not directly, indirectly, contributorily and/or by inducement, infringe any claim of the '194 patent either literally or under the doctrine of equivalents.

**REPLY TO COUNTERCLAIM PARAGRAPH 7**

Denied.

**COUNTERCLAIM PARAGRAPH 8**

Upon information and belief, the claims of the '194 patent are invalid and/or unenforceable for failure to comply with one or more of the provisions of Title 35 of the United States Code, including, but not limited to Sections 101, 102, 103 and/or 112.

- 3 -

**REPLY TO COUNTERCLAIM PARAGRAPH 8**

Denied.

**COUNTERCLAIM PARAGRAPH 9**

Upon information and belief, the '194 patent is unenforceable due to inequitable conduct committed by the patent applicants during prosecution of the '194 patent before the United States Patent and Trademark Office ("PTO").

**REPLY TO COUNTERCLAIM PARAGRAPH 9**

Denied.

**COUNTERCLAIM PARAGRAPH 10**

Upon information and belief, on August 12, 1985, Jurgen Engel and Gerhard Scheffler filed an application in the PTO claiming compounds that were derivatives of azelastine and like azelastine were antiallergic and antiasthma prophylactically active. The applicants argued the compounds were better than azelastine because they could be applied as an aerosol with no, or considerably less, bitter taste. On February 16, 1987, a declaration was filed in support of patentability of the derivative compounds wherein the declarant asserted the derivatives of azelastine were superior to azelastine because "[azelastine] cannot be applied in the form of an aerosol" and that "use as an aerosol is especially important for antiallergic and asthma prophylactic compounds." The declarant also argued the compounds of Examples 2 and 4 of the application "have almost 3 times as strong an antiallergic and asthma prophylactic action as [azelastine]." The declarant was an employee of Asta-Werke, but failed to disclose this fact to the PTO. The application later issued as U.S. Patent No. 4,704,387 ("the '387 prior art patent").

**REPLY TO COUNTERCLAIM PARAGRAPH 10**

MedPointe admits that Juergen Engel and Gerhard Scheffler are listed as Applicants for U.S. Patent Application No. 764,995 ("the '995 application"), which indicates on its face a filing date of August 12, 1985. MedPointe further admits that the '995 application included claims for "substituted benzylphthalazinone[s]." MedPointe admits that the '995 application stated, *inter alia*:

> The compounds of the invention are antiallergic and asthma prophylactically active, however, considerably stronger and better than the known compounds of German patent 2164058. Furthermore, in contrast to the known medicine AZELASTIN (compound according to Example 5 of German patent 2164058) they have either no, or a considerably less, bitter taste, so that they can be applied for example even as an aerosol.

- 4 -

MedPointe admits that the file history of the '995 application includes a declaration dated February 16, 1987 ("the February 16, 1987 Declaration"). MedPointe further admits that the February 16, 1987 Declaration states that "[s]ince 1976, she [the declarant] has been laboratory leader (isolated organ pulmology) in the Pharmaceutical Investigations Division of the Chemiewerke, Homburg." To the extent that Counterclaim Paragraph 10 contains any other or additional averments, MedPointe denies them.

**COUNTERCLAIM PARAGRAPH 11**

Upon information and belief, on November 13, 1987, less than nine months from the date the declaration was filed in support of the Engel and Scheffler application, Helmut Hettche filed an application in the Federal Republic of Germany claiming azelastine containing medicaments. The application claimed azelastine medicaments administered as aerosols to prophylactically treat allergy. The application further claimed that azelastine containing medicaments administered as aerosols resulted in no bitter taste side effect. On July 12, 1990, Helmut Hettche filed an application in the United States Patent Office claiming foreign priority to the application filed in the Federal Republic of Germany on November 13, 1987.

**REPLY TO COUNTERCLAIM PARAGRAPH 11**

MedPointe admits that German Patent Application number 373681 was filed on November 13, 1987. MedPointe further admits that the '644 application was filed on July 12, 1990 and claims priority from German patent application number 3748681. MedPointe further admits that Helmut Hettche is the applicant for the '644 application. MedPointe further admits that the '644 application states that:

Furthermore the invention provides a way to overcome problems which arise because of azelastine's exceptionally penetrating, bitter taste. The degree of the bitter taste is so intense that it is even found to be unpleasant in a dilution of $1 : 10^6$. This problem has hitherto prevented oral application of azelastine solutions, since patients refuse to take such azelastine solutions or suspensions. It was surprisingly found in trial subjects that this bitter taste was no longer in evidence when the azelastine formulations of the invention were sprayed into the nose. As a result, it is possible in this manner to apply solutions or suspensions of azelastine and its salts nasally without taste impairment. Moreover the bitter taste

- 5 -

is barely perceptible when the sprayed azelastine solution or suspension runs down into the pharynx.

MedPointe is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Counterclaim Paragraph 11 and therefore denies them.

## COUNTERCLAIM PARAGRAPH 12

Upon information and belief, on February 12, 1990, a declaration was filed in support of the '194 patent application and to overcome an obviousness rejection based in part on the '387 prior art patent. The declarant averred azelastine was twice as effective as the compound of Example 1 of the '387 prior art patent. The applicants prosecuting the patent argued these results were surprising and unexpected and supported a finding that the '194 medicaments were not obvious in view of the '387 patent. The applicants failed to inform the examiner that the '387 patent claimed five different compounds and that Example 4 thereof was structurally closer to azelastine and should have been compared to azelastine. The examiner, nonetheless, rejected the declaration anyway because there was an incomplete recitation of the study protocol used to obtain the results.

## REPLY TO COUNTERCLAIM PARAGRAPH 12

MedPointe admits that the file history of the '644 application includes a declaration dated January 23, 1990 ("the January 23, 1990 Declaration") that appears to have been submitted to the patent office with a letter dated February 12, 1990 stating, *inter alia*, that "the information in the declaration supports the patentability of the claims." MedPointe further admits that the file history of the '644 application includes a request for reconsideration dated December 26, 1989 ("the December 26, 1989 Request for Reconsideration") that discussed "comparative experiment[s]" and stated:

> In the case of azelastine, the inhibition was 47.1% whereas, in the case of the compound of Example 1 of the cited Engel patent, the inhibition was only 24.4%.

> Thus, azelastine was about twice as effective as the compound of Engel 1 of the Engel patent. This result is surprising and unexpected.

> For this reason, it is submitted that the claimed process is unobvious.

- 6 -

MedPointe further admits that the December 26, 1989 Request for Reconsideration stated, *inter alia*:

> Engel et al discloses compounds whose structures are similar to that of the presently claimed azelastine, differing in the R group. In the Engel patent, R is benzyl, phenethyl, methoxyethyl or allyl, whereas, in the present invention, the corresponding group is methyl.

MedPointe further admits that the file history of the '644 application includes an Examiner's Action dated March 26, 1990 stating, *inter alia*:

> The declaration supplied by the applicant, citing as unexpected the effectiveness of azelastine as compared with the preparation of Example 1 of Engel et al, is incomplete. The applicant claims several concentrations of azelastine in pharmaceutical preparations but does not indicate what concentration was used in the comparison studies.

To the extent that Counterclaim Paragraph 12 contains any other or different averments, MedPointe denies them.

## COUNTERCLAIM PARAGRAPH 13

Upon information and belief, in response to the examiner's criticism of the declaration, the applicants filed a second declaration purporting to further describe the experimental method of the first experiment. However, the second declaration did not describe the experiment conducted in the first declaration. Instead, it described a hypothetical experiment that involved application of azelastine directly to the nasal mucosa of research animals, an *in vivo* test. This test would have been more probative of the patentability of the application. However, the test that was actually conducted and described in the first declaration was an *in vitro* test that involved studying the effects of the drug on cells suspended in a buffered solution. The same declarant gave both the first and second declarations and knew the second declaration did not describe the experiments actually conducted and could not be used to support patentability. The declarant was also an employee of Asta-Werke, but failed to disclose this fact to the PTO. The application later issued as U.S. Patent No. 5,164,194, the patent in dispute.

## REPLY TO COUNTERCLAIM PARAGRAPH 13

MedPointe admits that the file history of the '644 application includes a declaration dated June 1, 1990 ("the June 1, 1990 Declaration") discussing the experiments described in the January 23, 1990 Declaration. MedPointe further admits that both the January

- 7 -

23, 1990 Declaration and the June 1, 1990 Declaration were signed by Istvan Szelenyi, then an employee of Asta Pharma. MedPointe further admits that the '644 application issued on November 17, 1992 as U.S. Patent No. 5,164,194. MedPointe further admits that the January 23, 1990 Declaration discussed experiments involving "sensitized rat peritoneal mast cells" in which "[t]he mast cells are incubated first with a test substance and then challenged with antigen." MedPointe is without knowledge or information sufficient to form a belief as to the truth of the averments in the seventh sentence of Counterclaim Paragraph 13 and therefore denies them. To the extent that Counterclaim Paragraph 13 contains any other or different averments, MedPointe denies them.

## COUNTERCLAIM PARAGRAPH 14

Upon information and belief, Helmut Hettche and Jurgen Engel participated in a scheme to materially misrepresent to the PTO the advantages and disadvantages of azelastine and derivative azelastine compounds in an effort to obtain a patent monopoly on azelastine medicines and derivative medicines of azelastine. Jurgen Engel made knowingly false statements to the PTO in pursuing an application for azelastine derivatives. But for these statements, Jurgen Engel would not have been granted the '387 patent. Helmut Hettche later made knowingly false statements to the PTO in pursuing his application for azelastine containing medicines. But for these statements, Helmut Hettche would not have been granted the '194 patent over the '387 patent.

## REPLY TO COUNTERCLAIM PARAGRAPH 14

Denied.

## COUNTERCLAIM PARAGRAPH 15

Upon information and belief, Jurgen Engel was an employee at Asta-Werke while the applications leading to the '194 patent were filed and prosecuted. Helmut Hettche was also an employee of Asta-Werke and was a subordinate employee to Jurgen Engel at the time those applications were being filed. Helmut Hettche knew of the application leading to the '387 patent claiming derivative compounds to azelastine. Helmut Hettche participated in the development and testing of those compounds and was aware of the statements made in the development and testing of those compounds and was aware of the statements made in the application and prosecution. Jurgen Engel was also aware Hettche was developing the medicaments claimed in the '194 patent, including an aerosol of azelastine at the time he filed the application resulting in the '387 patent. In fact, both applications were prosecuted by the same U.S. law firm.

- 8 -

**REPLY TO COUNTERCLAIM PARAGRAPH 15**

Upon information and belief, MedPointe admits that the name and address of the law firm Cushman, Darby & Cushman appears in the prosecution histories of the '387 patent and the '194 patent. MedPointe is without knowledge or information sufficient to form a belief as to the truth of the remaining averments of Counterclaim Paragraph 15, and therefore denies them.

**COUNTERCLAIM PARAGRAPH 16**

Upon information and belief, Helmut Hettche was aware that at least the compounds of Examples 2 and 4 of the '387 patent were almost 3 times more effective as antiallergy compounds than azelastine. Nonetheless, when prosecuting the application that resulted in the '194 patent, Hettche represented to the PTO that azelastine was twice as effective as the compound of Example 1 of the '387 patent, and that this result demonstrated azelastine was surprising and unexpectedly superior to the compounds disclosed in the '387 patent. Although Helmut Hettche knew the compounds of Examples 2 and 4 of the '387 patent were nearly three times as effective as azelastine, Hettche intentionally failed to disclose this fact to the PTO. The applicant knew that if he demonstrated the superior properties of the other '387 compounds including Examples 2 and 4, he would not be able to overcome a prima facie finding of obviousness by the examiner.

**REPLY TO COUNTERCLAIM PARAGRAPH 16**

Denied.

**COUNTERCLAIM PARAGRAPH 17**

Upon information and belief, Helmut Hettche was also aware that Jurgen Engel had previously disclosed the superiority of the '387 patent compounds to the PTO. In an effort to further argue azelastine was superior to the compounds disclosed in the '387 patent and to throw the Examiner off track, the applicant misrepresented study protocols and results described in the first declaration filed in support of the application. These misrepresentations were designed to make the method of application of azelastine claimed in the '194 patent application appear superior to application of the compounds disclosed in the '387 patent administered in the same manner. In fact, Hettche never presented results of these types of comparison studies.

## REPLY TO COUNTERCLAIM PARAGRAPH 17

Denied.

## COUNTERCLAIM PARAGRAPH 18

Upon information and belief, Helmut Hettche also misrepresented the state of the prior art in seeking to overcome the examiner's rejection to the Hettche application as anticipated by United States Patent No. 3,813,384 ("the '384 prior art patent"). In the paragraph bridging columns 6 and 7 of that patent, the '384 patent discloses administering azelastine "in the usual embodiments such as tablets, dragees, capsules, suppositories, drops, ointments, creams as well as injection solutions." The applicants of the '194 patent argued that this reference as interpreted by a person skilled in the art does not disclose that drops are administered to the patient. However, the applicants knew that Jurgen Engel had already argued to the PTO that the ability to administer antiallergic compounds as aerosols was important for the treatment of conditions described in the '194 patent application. It is well known in the art that aerosols are a form of administering drops. In fact, the '194 patent application admits drops are routinely administered to patients to treat allergies wherein at column 2, lines 12 through 17 the applicant states the preferred methods of administering azelastine are in the forms of "drops, ointments, [and] creams ..." These were the exact modes of administering azelastine as disclosed in the '384 patent. Nonetheless, the applicants for the '194 patent continued to attempt to confuse and confound the examiner by arguing that one skilled in the art would not have understood the drops of azelastine disclosed in the '384 patent to be administered directly to the patient.

## REPLY TO COUNTERCLAIM PARAGRAPH 18

MedPointe admits that U.S. Patent No. 3,813,384 ("the '384 patent") states:

The compounds according to the present invention are used as active ingredients in pharmaceutical preparations and may be administered in usual embodiments such as tablets, dragees, capsules, suppositories, drops, ointments, creams as well as injection solutions.

(U.S. Patent No. 3,813,384, col. 6, ll. 66-70.) MedPointe further admits that the '194 patent

states:

The preferred embodiment of the invention is a sterile and stable aqueous solution of azelastine or one or more of its salts which can be used in the form of drops, ointments, creams, gels, insufflatable powders or, in a particularly preferred embodiment, in the form of a spray (preferably a nasal spray).

(U.S. Patent No. 5,164,194 , col. 2, ll. 12-17.) To the extent that Counterclaim Paragraph 18

contains any other or different averments, MedPointe denies them.

- 10 -

## COUNTERCLAIM PRAYER FOR RELIEF

WHEREFORE, Sun respectfully requests the Court to enter judgment against Counterclaim Defendant MedPointe as follows:

    A.    Declaring that Sun's proposed drug product that is the subject of ANDA 78-738 would not and will not directly, indirectly, contributorily and/or by inducement, infringe any claim of the '194 patent;

    B.    Declaring that U.S. Patent No. 5,164,194 is invalid for failure to comply with one or more of the provisions of 35 U.S.C. §§ 101, 102, 103 and/or 112;

    C.    Declaring that U.S. Patent No. 5,164,194 is unenforceable due to the '194 patent applicants' inequitable conduct before the PTO.

    D.    Awarding Sun its reasonable costs and attorneys' fees incurred in connection with this action; and

    E.    Awarding all such other and further relief as this Court may deem just and proper.

## REPLY TO COUNTERCLAIM PRAYER FOR RELIEF

MedPointe denies that Sun is entitled to any relief whatsoever from MedPointe or the Court, either as prayed for in its Counterclaims or otherwise.

MedPointe further denies each and every allegation contained in Sun's Answer, Affirmative Defenses, and Counterclaims that was not specifically admitted, denied or otherwise responded to in this Reply.

## MEDPOINTE'S PRAYER FOR RELIEF

WHEREFORE, MedPointe prays for judgment as follows:

    A.    Dismissing Sun's Counterclaims with prejudice;

    B.    Awarding MedPointe the relief sought in its Complaint;

    C.    Awarding MedPointe its costs, attorneys' fees and expenses incurred in this action; and

    D.    Awarding MedPointe such further relief as the Court deems just and proper.

*Of Counsel:*

John M. Desmarais
Peter J. Armenio
Anne S. Toker
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022
(212) 446-4800

Frederick L. Cottrell, III (#2555)
Jameson A.L. Tweedie (#4927)
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
cottrell@rlf.com
tweedie@rlf.com

*Attorneys for Plaintiff*
*MedPointe Healthcare Inc.*

Dated:  September 14, 2007

- 12 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 14, 2007, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF which will send notification of such filing, and

hand delivered to the following:

> Francis J. Murphy, Esq.
> MURPHY & LANDON
> 1011 Centre Road, Suite 210
> Wilmington, Delaware 19805

I HEREBY CERTIFY that on September 14, 2007, I sent the foregoing document by

Federal Express, next business day delivery, to the following non-registered participants:

> Keith D. Parr
> Scott B. Feder
> Kevin M. Nelson
> David B. Abramowitz
> Amanda K. Davis
> LORD BISSELL & BROOK LLP
> 111 South Wacker Drive
> Chicago, IL 60606

> Jameson A.L. Tweedie (#4927)
> tweedie@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899

- 13 -