IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MEDA PHARMACEUTICALS INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SUN PHARMACEUTICAL INDUSTRIES )<br>LTD., )<br>)<br>Defendant. )<br>) | C.A. No. 07-407 (SLR) |

**DEFENDANT'S NOTICE OF DEPOSITION OF MEDA PHARMACEUTICALS INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)**

PLEASE TAKE NOTICE that, pursuant to Rules 26, 30 and 45 of the Federal Rules of Civil Procedure, Defendant Sun Pharmaceutical Industries, Ltd. ("Sun") will take the deposition of the officer(s), directors(s), managing agent(s), or other person(s) designated by Meda Pharmaceuticals Inc. ("Meda") concerning the topics set forth in Schedule A below. The deposition will commence at 9:00 a.m. on August 19, 2008, at Locke, Lord, Bissell & Liddell LLP, 885 Third Avenue, 26th Floor, New York, NY 10022, or at such other time and place as may be mutually agreed upon by the parties. The deposition will be videotaped and stenographically recorded by a person authorized by law to administer oaths, and will continue on consecutive days until completed.

Pursuant to Fed. R. Civ. Proc. 30(b)(6), Meda shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf with respect to the topics set forth below. Meda is also requested to provide Sun's counsel with written notice at least five (5) business days prior to the date of the deposition of the name(s) and position(s) of

the designee(s) who will testify on behalf of Meda and to identify the matters to which each designee will testify.

                                                   **MURPHY & LANDON**

                                                   /s/ Francis J. Murphy
                                                   Francis J. Murphy, DE I.D. No. 223
                                                   1011 Centre Road, Suite 210
                                                   Wilmington, Delaware  19805
                                                   (302) 472-8103
                                                   (302) 472-8135 (fax)
                                                   fmurphy@msllaw.com

                                                 **Attorneys for Defendant**
                                                 **Sun Pharmaceutical Industries Ltd.**

*Of counsel:*

Keith D. Parr
Scott B. Feder
Alan B. Clement
Kevin M. Nelson
David B. Abramowitz
LOCKE LORD BISSELL & LIDDELL LLP
(312) 443-0261 (DBA)
(312) 896-6261 (DBA) (fax)
dabramowitz@lordbissell.com

**Attorneys for Defendant**
**Sun Pharmaceutical Industries Ltd.**

Dated: July 17, 2008

153658

**SCHEDULE A**

    **DEFINITIONS**

    1.    As used herein, the terms "you," "your," or "Meda" shall mean Plaintiff, Meda Pharmaceuticals Inc. and any related companies, divisions or subsidiaries, parents, affiliated corporate entities, and any predecessor business entity, whether incorporated or not, as well as any person under the control of the foregoing entities, and any past or present directors, officers, employees, agents and attorneys thereof.

    2.    As used herein the term "MedPointe" shall mean MedPointe Healthcare Inc. and any related companies, divisions or subsidiaries, parents, affiliated corporate entities, and any predecessor business entity, whether incorporated or not, as well as any person under the control of the foregoing entities, and any past or present directors, officers, employees, agents and attorneys thereof.

    3.    As used herein the term "Carter-Wallace" shall mean Carter-Wallace, Inc. and any related companies, divisions or subsidiaries, parents, affiliated corporate entities, and any predecessor business entity, whether incorporated or not, as well as any person under the control of the foregoing entities, and any past or present directors, officers, employees, agents and attorneys thereof.

    4.    As used herein, the term "'194 patent" shall mean United States Patent No. 5,164,194.

    5.    As used herein, the term "azelastine" will be used to refer to azelastine and any pharmaceutically acceptable salts thereof, including, but not limited to, azelastine hydrochloride.

    6.    As used herein, the term "Asta" shall mean Asta Pharma, AG, Asta Medica, AG, Asta-Werke, AG and any related companies, divisions or subsidiaries, parents, affiliated

corporate entities, and any predecessor business entity, whether incorporated or not, as well as any person under the control of the foregoing entities, and any past or present directors, officers, employees, agents and attorneys thereof.

7. As used herein the term "Viatris" shall mean Viatris GmbH and Co., Viatris KG and any related companies, divisions or subsidiaries, parents, affiliated corporate entities, and any predecessor business entity, whether incorporated or not, as well as any person under the control of the foregoing entities, and any past or present directors, officers, employees, agents and attorneys thereof.

8. As used herein, the terms "person" or "persons" shall mean and include any natural persons, any business entity, whether a corporation, partnership, limited partnership, association, unincorporated association, firm, joint venture, any governmental body or entity, whether a government agency, board, division, or department, or any other entity.  Further, the term "person" includes directors, officers, employees, agents, representatives, and attorneys acting on behalf of such "person."

9. The terms "document" and "documents" are used here in a comprehensive sense as set forth in Rule 34(a) of the Federal Rules of Civil Procedure, and shall be defined to include, without limitation, all tangible things, all written, printed, typed, photocopied, photographic, graphic or recorded matter of any kind, any recorded material however produced or reproduced, including agreements, books, calendars, charts, contracts, communications, computer databases, computer memory media, computer printouts, correspondence, desk pads, diaries, drawings, facsimile transmissions, files, folders, graphs, guidelines, instructions, invoices, manuals, memoranda, minutes, notes, operating procedures, reports, rules, studies, and all drafts (whether signed or unsigned), that is not identical to the original or that contains any commentary or

notation whatsoever that does not appear on the original. The terms "document" or "documents" also include electronic data.

10. As used herein, the terms "all" and "each" shall be construed as "all and each."

11. The term "electronic data" means the original, copy of the original, and any non-identical copy of information of any kind stored in electronic, magnetic, optical, magneto-optical, or digital form. Electronic data includes, but is not limited to, originals and all copies of electronic mail ("e-mail"); activity listings of electronic mail receipts and/or transmittals; voicemails; audio or video recordings of any kind; output resulting from the use of any software program; and all miscellaneous electronic files and/or file fragments, regardless of the media on which they are stored and regardless of whether the data resides in an active file or file fragment. Electronic data further includes without limitation any and all information stored in hard disks, floppy disks, CD-ROM disks, Bernoulli disks and their equivalents, magnetic tapes of all kind and computer chips. Electronic data also includes the file, folder tabs, containers or labels appended to any storage device containing electronic data.

12. The term "communication" means the transmittal of information in any form, including but not limited to writings, oral statements, and electronic mail.

13. Something "relates to" a subject if it makes a statement about, refers to, mentions, discusses, describes, reflects, deals with, consists of, constitutes, comprises, concerns, evidences, records, or in any way pertains to the subject, either in whole or in part, and either directly or indirectly.

14. Each request shall be read to be inclusive rather than exclusive. Accordingly, the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the interrogatory or request all documents that otherwise might be

153658

construed to be outside of its scope. "Including" means "including without limitations." The word "all" includes "any" and vice versa. The past tense includes the present tense and the present tense includes the past tense. The use of the singular form of any word includes the plural form and vice versa. The masculine form of any word includes the feminine form and vice versa.

15. The term "prosecution of" shall mean the prosecution of the indicated patents or patent applications in the United States Patent and Trademark Office ("USPTO"), and any foreign counterpart of the USPTO.

16. The term "prior art" to a patent means all publications, patents, and all uses, sales, offers for sale, or other activity relating to the subject matter of the patent and having or occurring at a date such as to be relevant under any subdivision of 35 U.S.C. §§ 102 or 103, or otherwise qualifying as prior art.

**MATTERS UPON WHICH EXAMINATION IS TO BE TAKEN**

1. The document retention policies of Meda Pharmaceuticals Inc., MedPointe Healthcare, Inc., Carter-Wallace, Asta and Viatris, including but not limited to the process through which documents are retained, the process through which documents are retained for litigation, the process through which documents are destroyed, any changes in the document retention policies of these entities since their formation, the location of all documents retained by these entities; and all records reflecting the identify of any document that has been destroyed or when any document has been destroyed, including but not limited to document retention lists, indices and document destruction notices.

2. The indexing, cataloging, retention, storage and destruction of all documents, files, papers, notebooks, communications, correspondence and other materials, including without

153658

limitation electronic documents, electronic files and emails, related to azelastine, Astelin, Optivar, the '194 patent, research and development of anti-allergic or anti-asthma products, sales and marketing of Meda's azelastine products, including Astelin and Optivar by Meda Pharmaceuticals Inc., MedPointe Healthcare, Inc., Carter-Wallace, Asta and Viatris.

3. The document hold notices issued in any litigation involving the '194 patent and litigation hold policies of Meda Pharmaceuticals Inc., MedPointe Healthcare, Inc., Carter-Wallace, Asta and Viatris.

4. All evidence supporting Meda's contention that copying is a secondary consideration of non-obviousness for the '194 patent.

5. All evidence supporting Meda's contention that commercial success is a secondary consideration of non-obviousness for the '194 patent.

6. All evidence supporting Meda's contention that praise by others is a secondary consideration of non-obviousness for the '194 patent.

7. All evidence supporting Meda's contention that failure to invent by others is a secondary consideration of non-obviousness for the '194 patent.

8. All evidence supporting Meda's contention that unexpected results are a secondary consideration of non-obviousness for the '194 patent.

9. All evidence supporting Meda's contention that long-felt but unsolved need is a secondary consideration of non-obviousness for the '194 patent.

10. All evidence supporting Meda's contention that industry acceptance is a secondary consideration of non-obviousness for the '194 patent.

11. All evidence supporting Meda's contention that licensing is a secondary consideration of non-obviousness for the '194 patent.

12. All evidence supporting Meda's contention that assignment is a secondary consideration of non-obviousness for the '194 patent.

13. All evidence regarding contemporaneous invention by others of the methods claimed in the '194 patent.

14. All evidence establishing inventorship of the '194 patent by Helmut Hettche.

15. Evidence establishing gross and net sales of azelastine products on a quarterly basis, including both Astelin and Optivar by Meda, MedPointe, Carter-Wallace and Muro.

16. Research and development of non-oral formulations of azelastine by Meda, MedPointe, Carter-Wallace, Esai, Viatris or any other entity, including but not limited to solutions, suspensions, insufflatable powders, aerosols, drops and sprays.

17. The uses of azelastine, including but not limited to those related to the treatment of allergic rhinitis, vasomotor rhinitis, allergic conjunctivitis, non-allergic conjunctivitis, asthma, allergies, allergy symptoms, viruses and nasal congestion .

18. The pharmacologic effects of azelastine, including but not limited to inhibition of histamine, inhibition of mast cells, anesthetic properties and reduction of congestion.

19. Development of azelastine as an oral, nasal and ophthalmic antihistamine.

20. Development of azelastine as a mast cell inhibitor.

21. Development of azelastine as an asthma treatment.

22. Meda's contentions regarding the validity of the '194 patent.

23. Meda's contentions regarding Sun's infringement of the '194 patent.

24. The disclosures made in United States Patent No. 3,813,384.

25. The disclosures made in United States Patent No. 4,704,387.

153658

26. All facts related to the pre-clinical and clinical testing of non-oral formulations of azelastine, including but not limited to aerosol formulations, nasal sprays, nasal drops, eye sprays and eye drops.

27. All facts related to the marketing and promotion of Astelin.

28. All facts related to the marketing and promotion of Optivar.

29. All agreements to co-promote products produced by Carter-Wallace, MedPointe, Muro or Meda, including but not limited to all agreements with other pharmaceutical companies, including but not limited to Sepracor and Bausch & Lomb.

30. All facts related to acquisition of Carter-Wallace's product lines and associated intellectual property, sales force and marketing agreements by MedPointe.

31. All facts related to acquisition of MedPointe's product lines and associated intellectual property, sales force and marketing agreements by Meda.

32. All facts related to prosecution of any patent application ever owned by Asta filed in the United States before 1989 and having a claim that recites azelastine as a claim element, including but not limited to the '194 patent and any related United States or foreign patent applications.

33. All facts related to prosecution of United States Patent No. 4,704,387 and any related United States or foreign patent applications.

34. All evidence supporting Meda's contention of irreparable harm.

35. All facts related to Meda's decision to file suit against Sun.

36. All facts related to submission and approval of NDA No. 21-114, including but not limited to all correspondence with FDA, supplemental submissions and amendments to NDA No. 21-114.

153658

37. All facts related to submission and approval of NDA No. 21-127, including but not limited to all correspondence with FDA, supplemental submissions and amendments to NDA No. 21-127.

38. All facts related to submission IND No. 54,893, including but not limited to all correspondence with FDA, supplemental submissions and amendments to IND No. 54,893.

39. All facts related to the occurrence and reporting of adverse events related to the pharmaceutical use of azelastine, Astelin and/or Optivar, including but not limited to taste perversion/bitter taste and somnolence.

40. All facts related to any assignments or licenses of the '194 patent.

41. All facts related to any investigation or agreement by Meda, MedPointe or any other entity to produce, market or license an authorized generic nasal or ophthalmic azelastine product.

42. Evidence sufficient to show the number of prescriptions written per year for Astelin and Optivar from the time of their FDA approval to the present.

43. Support for the statement at col. 1, lines 63-66 of the '194 patent, which reads "It was surprisingly found in trial subjects that this bitter taste was no longer in evidence when the azelastine formulations of the invention were sprayed into the nose."

# CERTIFICATE OF SERVICE

I, Francis J. Murphy, hereby certify that on this 17th day of July, 2008, I electronically filed DEFENDANT'S NOTICE OF DEPOSITION OF MEDA PHARMACEUTICALS INC. PURSUANT TO FED. R. CIV. P. 30(b)(6) with the Clerk of Court using CM/CEF which will send notification of such filings(s) to the following:

> Frederick L. Cottrell, III
> RICHARDS, LAYTON & FINGER P.A.
> One Rodney Square
> P.O. Box 551
> Wilmington, Delaware 19899
> cottrell@rlf.com
> tweedy@rlf.com
>
> Attorneys for Plaintiff
> Meda Pharmaceuticals, Inc.

I, Francis J. Murphy, hereby certify that on this 17th day of July, 2008, I have mailed by United States Postal Service, the document(s) DEFENDANT'S NOTICE OF DEPOSITION OF MEDA PHARMACEUTICALS INC. PURSUANT TO FED. R. CIV. P. 30(b)(6) to the following non-registered participants:

> John M. Desmaris
> Peter J. Armenio
> Anne S. Toker
> KIRKLAND & ELLIS LLP
> Citigroup Center
> 153 East 53rd Street
> New York, New York 10022
>
> Attorneys for Plaintiff
> Meda Pharmaceuticals, Inc.

**MURPHY & LANDON**

/s/ Francis J. Murphy
Francis J. Murphy, DE I.D. No. 223
1011 Centre Road, Suite 210
Wilmington, Delaware  19805
(302) 472-8103
(302) 472-8135 (fax)
fmurphy@msllaw.com

11

153658